IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TONYA A. HERMAN,  No. 6:15-cv-02334-HZ

        Plaintiff,  OPINION & ORDER

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.


Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97309

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97201

1 - OPINION & ORDER

Thomas M. Elsberry
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Tonya Herman brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Court AFFIRMS the Commissioner's decision.

## BACKGROUND

Plaintiff was born in 1981 and was twenty-seven years old on the alleged disability onset date. Tr. 25, 40.[1] She completed the eighth grade and has not earned a GED. Tr. 42. Plaintiff has past relevant work experience as a cashier and window assembler. Tr. 25. She applied for DIB and SSI benefits on April 12, 2012. Tr. 206, 210. The Commissioner initially denied her application and denied it again on reconsideration. Tr. 141, 145–46. An administrative hearing was held on April 29, 2014, before Administrative Law Judge ("ALJ") Jo Hoenninger. Tr. 34. On May 22, 2014, ALJ Hoenninger issued a written opinion denying Plaintiff's application. Tr. 12–26. Plaintiff's request for review of the decision was denied by the Appeals Counsel on October 16, 2015, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–3.

//

//

---

[1] Citations to "Tr." Refer to pages of the administrative record transcript, filed here as ECF No. 11.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements through the relevant time period and had not engaged in substantial gainful activity since October 31, 2008. Tr. 14.

At step two, the ALJ found that Plaintiff had the following severe impairments: "mild spondylosis; anxiety without agoraphobia; and bipolar." *Id.* The ALJ concluded that a number of other conditions were non-severe, including: medullary sponge kidneys, diabetes mellitus, a minimal obstructive lung defect, gene mutation, varicose veins, and joint pain. Tr. 14–15.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which met or equaled the severity of one of the listed impairments. Tr. 15.

The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the [RFC] to perform light work . . . except: [Plaintiff] can lift, carry, push and pull no more than 20 pounds occasionally and 10 pounds frequently. She can stand and walk six hours out of an eight-hour day and can sit for six hours out of an eight-hour day. The claimant can understand and remember simple instructions and has sufficient concentration, persistence and pace to complete simple, routine work for a normal workday and workweek. She can have occasional, brief, face-to-face contact with the general public and with coworkers. The claimant would have no difficulties working with supervisors.

Tr. 17. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 25.

At step five, the ALJ found that, given Plaintiff's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that she

could perform, including: motel cleaner, mail sorter, and packing line worker. Tr. 25–26. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to show that there was work in the national economy that Plaintiff could perform; (2) improperly finding that Plaintiff's symptom testimony was not credible; (3) improperly assessing the opinion of examining provider Dr. Jill Spendal; and (4) improperly rejecting the testimony of lay witness Gloria Herman, Plaintiff's grandmother. Additionally, Plaintiff argues that the opinion of Dr. David Freed, submitted to the Appeals Council after the ALJ's written opinion, was consistent with Dr. Spendal's opinion and showed that the ALJ's decision was not based on substantial evidence.

## I. The ALJ's Finding that Motel Cleaner Jobs Existed in Significant Numbers in the National Economy

Plaintiff argues that she could not perform two of the three jobs that the ALJ found she could perform and that the remaining job, motel cleaner, could not by itself satisfy the ALJ's burden at step five. Defendant concedes that Plaintiff could not perform the jobs of mail sorter or packaging line worker because they required higher levels of reasoning than what Plaintiff's RFC included. Notwithstanding that concession, Defendant maintains that motel cleaner jobs exist in significant numbers in the national economy sufficient to support the ALJ's step five findings.

Plaintiff cites to *Lounsburry v. Barnhart* to support the position that a single occupation cannot constitute the "significant range of work" required at step five. 464 F.3d 944, 950 (9th Cir. 2006), *amended on other grounds*, 468 F.3d 1111 (9th Cir. 2006). *Lounsburry* is distinguishable because it dealt with whether a claimant of an advanced age had skills that were readily transferable to a significant range of work under Rules 202.07 and 202.00(c). *Id.* at 1116–17. Those rules, which contain the "significant range of work" requirement, do not apply in this case because Plaintiff is not of an advanced age. Plaintiff, by contrast, was twenty-seven years old at her alleged disability onset date. The question at step five is not whether she had skills that were transferable to a significant range of work; rather, it is whether a significant number of jobs exist in the national economy that she could perform. The VE established that 223,165 motel cleaner jobs existed nationally and 2,826 jobs existed in Oregon. Tr. 26, 72–73. Those are "significant numbers" sufficient to carry the ALJ's burden at step five. *See e.g.*, *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

//

//

## II. The ALJ's Assessment of Plaintiff's Symptom Testimony

Plaintiff alleged that she suffered from joint pain, osteoarthritis, degenerative disc disease, medullary sponge kidney disorder, panic disorder, agoraphobia, posttraumatic stress disorder, and bipolar disorder. Tr. 237. The ALJ considered Plaintiff's symptom testimony and found that her "activities of daily living, work history and the overall medical record suggests that claimant is not totally incapable of working." Tr. 18.

An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. *Lingenfelter*, 504 F.3d at 1035–36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (citation and internal quotation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation omitted). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. *Id.*

The ALJ found that Plaintiff was credible to the extent that she suffered from the above-listed conditions, but not to the degree that she claimed. Tr. 18. Accordingly, the ALJ reduced Plaintiff's RFC "to accommodate limitations resulting from these conditions." *Id.* The ALJ then engaged in an extensive analysis of Plaintiff's medical history replete with citations to the record. Tr. 18–22. For example, after suffering a concussion caused by an automobile accident in 2008, Plaintiff began receiving daily Methadone from a Methadone clinic and requested a prescription of pain medication on top of her Methadone. Tr. 19, 606. Her treating family nurse practitioner, Aaron Evers, stated that she was going to the Methadone clinic "on her own decision" and not from his recommendation. Tr. 19, 608. He recommended that she stop taking Methadone, concluded that there had been "no substantiation of where her pain is originating from," that her "workup has been normal," and he referred her to a pain clinic for further evaluation. Tr. 608, 613. In further example, the ALJ also recounted several x-rays and medical examinations indicating that Plaintiff had minimal symptoms and few physical limitations. Tr. 20, 581, 660, 666. The Court finds that the ALJ has identified medical evidence that undermines Plaintiff's complaints and has offered specific, clear and convincing reasons supporting his credibility determination. *Lingenfelter*, 504 F.3d at 1036.

The ALJ found Plaintiff's work history undermined her assertion of total disability. *See Thomas v. Bearnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that the ALJ gave clear and convincing reasons for discounting the plaintiff's testimony regarding her inability to work where she had "'extremely poor work history' and 'has shown little propensity to work in her lifetime'"). In this case, there were substantial gaps in Plaintiff's work history predating her alleged disability onset date, which raised questions as to whether her unemployment was due to her medical impairments. Tr. 24.

The ALJ also found that Plaintiff's daily activities were not limited to the extent that her complaints would indicate. *Id.* For example, Plaintiff lived with her two children who were eleven and three years old at that time; she had a driver's license and drove up to two hours per week to go grocery shopping or go to doctor's appointments. Tr. 40–41. She also reported cooking, cleaning, doing dishes, laundry, vacuuming, and managing her money. Tr. 45–46. Plaintiff's hobbies include using the computer, watching TV, reading, painting, walking daily, and swimming twice a week. Tr. 47–48, 50. Plaintiff indicated that her pain was under control with medication. The ALJ concluded that "[s]uch robust activities of daily living contradict[ed]" Plaintiff's subjective symptom testimony. Tr. 24.

Finally, the ALJ found that the medical record as a whole did not support the severity of Plaintiff's claimed impairments. The ALJ reasoned that Plaintiff's treatment had been "essentially routine and/or conservative in nature and has been generally successful in controlling her symptoms." *Id.* He further explained that the record indicated that Plaintiff had not been "entirely compliant in following her treatment providers' recommended treatment" and that there was "possible symptom exaggeration." *Id.* In sum, The Court agrees with the ALJ and finds that he gave clear and convincing reasons supported by substantial evidence in the record to accord Plaintiff's testimony limited credibility.

### III. The ALJ's Assessment of the Opinion of Examining Physician Dr. Spendal

Next, Plaintiff argues that the ALJ unreasonably assessed Dr. Spendal's opinion. Dr. Spendal is an examining provider whose opinion is not contradicted by that of another medical provider. Generally, more weight is given to the opinion of a treating source than to an examining source and more weight is given to the opinion of an examining source than to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). An ALJ may reject a

treating or examining doctor's uncontroverted opinion only for "clear and convincing" reasons supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Dr. Spendal diagnosed Plaintiff with panic disorder and Bipolar II and gave her a GAF score of 65. Tr. 22, 671. She also opined that Plaintiff had no limitations in her daily living but marked limitations in social functioning, as well as in concentration, persistence, or pace. Tr. 22, 676–77. Dr. Spendal noted that Plaintiff would decompensate with even minimal increases in mental demands. *Id.* She also opined that Plaintiff would struggle to work with others and interact with the public. Tr. 675. Dr. Spendal concluded that Plaintiff would benefit from increased frequency of breaks and would need reduced contact with groups. Tr. 23, 676–77.

The ALJ gave Dr. Spendal's opinion little weight. Tr. 23. The ALJ found that her opinion was inconsistent with Plaintiff's psychiatric history which showed conservative and routine treatment modalities. *Id.* He also found that the opinion was inconsistent with Dr. Spendal's own mental status examination and GAF score of 65, which indicated only mild symptoms. Tr. 22, 671. Additionally, the ALJ found that Dr. Spendal's opinion was inconsistent with Plaintiff's statements and Plaintiff's daily activities. *Id.* As discussed above, to the extent that Plaintiff's discredited subjective symptom testimony formed the basis for Dr. Spendal's opinion, the ALJ was justified in according her assessment little weight. The ALJ reasonably rejected Dr. Spendal's opinion because it was inconsistent with Plaintiff's psychiatric history, inconsistent with her own mental status exam and GAF score, inconsistent with Plaintiff's statements and daily activities, and relied on Plaintiff's discredited statements. The Court finds that these are clear and convincing reasons supported by substantial evidence in the record.

Moreover, Plaintiff asserts that Dr. Freed's opinion, submitted after the ALJ's written decision was issued, undermines the ALJ's findings. When a plaintiff submits new medical evidence to the Appeals Council, that evidence becomes part of the administrative record which the "district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1160 (9th Cir. 2012). Plaintiff argues that, while Dr. Freed found that Dr. Spendal's report was flawed, that the two opinions were consistent in finding moderate limitations related to Plaintiff's concentration, work attendance, and ability to interact with others. Tr. 675–76, 1196–98. Dr. Freed found that Plaintiff's anxious symptoms would cause her to be easily overwhelmed when interacting with others in a work setting and that her depression would decrease her ability to remember instructions. Tr. 1195. As the government noted, however, the ALJ's RFC findings accommodated those limitations. Tr. 17. In particular, the ALJ found that Plaintiff "can understand and remember simple instructions and has sufficient concentration, persistence and pace to complete simple, routine work." *Id.* The ALJ's RFC findings also stated that Plaintiff "can have occasional, brief, face-to-face contact with the public and with coworkers." *Id.* Accordingly, the Court finds that Dr. Freed's opinion does not undermine the substantial evidence in the record supporting the ALJ's decision.

### IV. The ALJ's Assessment of Gloria Herman's Lay Testimony

Lastly, Plaintiff argues that the ALJ erred in according little weight to Ms. Herman's lay testimony regarding Plaintiff's limitations. Tr. 23. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for

discounting such testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons for discounting lay witness testimony include: conflicting with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Ms. Herman, Plaintiff's grandmother, testified that other than using a shower chair, Plaintiff was able to manage independent self-care. Tr. 23, 282–89. Ms. Herman further stated that Plaintiff prepared meals daily, did housework, drove, shopped in stores, and managed her money. *Id.* She stated that Plaintiff got along well with people in authority and followed instructions well. *Id.* Regarding Plaintiff's capabilities, Ms. Herman stated that she struggled with large groups and could not stand for very long because of varicose veins. *Id.*

The ALJ accorded moderate weight as to Ms. Herman's testimony regarding Plaintiff's daily activities. Tr. 23. However, the ALJ gave little weight to her testimony regarding Plaintiff's limitations. *Id.* The ALJ found that Ms. Herman's testimony was based on Plaintiff's subjective complaints which lacked credibility. Tr. 23–24. Further, her testimony was inconsistent with the medical record and the ALJ speculated that she may have had an underlying financial incentive in seeing Plaintiff obtain benefits. Ms. Herman's lay testimony was similar to Plaintiff's own subjective complaints. As discussed above, this Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony based on the medical record and Plaintiff's daily activities. It was germane for the ALJ to accord little weight to Ms. Herman's lay testimony as to Plaintiff's work limitations because it relied on Plaintiff's own discredited statements.

The ALJ's speculation that Ms. Herman, as a family member, was an interested party "ran afoul" of Ninth Circuit precedents. *See Valentine*, 574 F.3d 694 (holding that a spouse's

statements regarding the plaintiff's capabilities cannot be rejected on the basis that the spouse is an "interested party" in the abstract). The ALJ must "tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." *Id.* The ALJ, nonetheless, provided reasons germane to the witness, including that her testimony was inconsistent with medical evidence in the record and that she relied on Plaintiff's discredited subjective symptom testimony.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 24 day of April, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge